1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   ALICIA RICO BALLESTEROS,                    No.  2:21-CV-0506-DMC

12                    Plaintiff,

13          v.                                    <u>MEMORANDUM OPINION AND ORDER</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                     Defendant.
16

17

18                  Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20   Pursuant to the written consent of all parties, ECF Nos. 7 and 25, this case is before the

21   undersigned as the presiding judge for all purposes, including entry of final judgment. <u>See</u> 28

22   U.S.C. § 636(c), <u>see also</u> ECF No. 26 (minute order reassigning case to Magistrate Judge).

23   Pending before the Court are the parties' briefs on the merits, ECF Nos. 21 and 22.

24                  The Court reviews the Commissioner's final decision to determine whether it is:

25   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

26   whole. <u>See Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more

27   than a mere scintilla, but less than a preponderance. <u>See Saelee v. Chater</u>, 94 F.3d 520, 521 (9th

28   Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a

conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. <u>See</u> <u>Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. <u>See</u> <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. <u>See</u> <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, <u>see</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, <u>see</u> <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. <u>See</u> 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

| | | |
|---|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

/ / /

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on April 19, 2016. See CAR 279, 286.[1] In the application, Plaintiff claims disability began on October 25, 2008. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing. Plaintiff's first administrative hearing was held on April 10, 2018; however, Plaintiff was granted a postponement for the purposes of obtaining representation. Her second hearing, in which she also lacked counsel, was held on September 19, 2018, before Administrative Law Judge (ALJ) Vincent A. Misenti. In a December 11, 2018, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1.  The claimant has the following severe impairment(s): degenerative disc disease of the cervical and lumbar spine, rotator cuff tear of the right shoulder, and obesity (20 CFR 404.1520(c) and 416.920(c));

2.  The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3.  The claimant has the following residual functional capacity: she can perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she has little or no English and is right hand dominant. The claimant is limited to occasional right overhead reaching and occasional climbing of ramps, stairs, ladders, and scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. The claimant cannot work around unprotected heights and must avoid concentrated exposure to moving mechanical parts;

4.  Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 31, 34-35.

After the Appeals Council declined review on January 29, 2020, this appeal followed.

/ / /

/ / /

---

[1]     Citations are to the Certified Administrative Record (CAR) lodged on October 26, 2021, ECF No. 9.  The Administrative Law Judge indicated an application date of March 29, 2016. However, the copies of Plaintiff's application included in the lodged administrative record are dated April 19, 2016.

1

**III.  DISCUSSION**

2          Plaintiff raises the following legal issues in her brief:

3                  1.     At Step 2, the ALJ failed to consider Plaintiff's knee
          impairment, resulting in an incomplete residual functional capacity analysis
4          at Step 4.

5                  2.     At Step 4, the ALJ improperly rejected Plaintiff's testimony and
          statements.
6

7                  3.     At Step 4, the ALJ erred in rejecting medical opinion evidence
          relating to Plaintiff's worker's compensation claim.

8                  4.     The ALJ failed to develop the record.

9     **A.     <u>Severity Determination</u>**

10          To qualify for benefits, the plaintiff must have an impairment severe enough to

11   significantly limit the physical or mental ability to do basic work activities. <u>See</u> 20 C.F.R. §§

12   404.1520(c), 416.920(c).  In determining whether a claimant's alleged impairment is sufficiently

13   severe to limit the ability to work, the Commissioner must consider the combined effect of all

14   impairments on the ability to function, without regard to whether each impairment alone would be

15   sufficiently severe. <u>See</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1289-90 (9th Cir. 1996); <u>see also</u> 42

16   U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of

17   impairments, can only be found to be non-severe if the evidence establishes a slight abnormality

18   that has no more than a minimal effect on an individual's ability to work. <u>See</u> Social Security

19   Ruling (SSR) 85-28; <u>see also</u> <u>Yuckert v. Bowen</u>, 841 F.2d 303, 306 (9th Cir. 1988) (adopting

20   SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by

21   providing medical evidence consisting of signs, symptoms, and laboratory findings. <u>See</u> 20

22   C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient.

23   <u>See</u> <u>id.</u>

24          At Step 2, the ALJ assessed the severity of Plaintiff's mental and physical

25   impairments. <u>See</u> CAR 31-33. In this analysis, the ALJ did not discuss Plaintiff's knee condition

26   or antalgic gait. <u>See</u> <u>id.</u> Plaintiff contends the ALJ erred by discussing only her degenerative disc

27   disease, rotator cuff tear, and obesity as severe physical impairments. <u>See</u> ECF No. 21, pg. 15.

28   She argues that the record includes ample support for also classifying her knee impairment as

1    severe. See id. Plaintiff maintains that, as a result of excluding her knee impairments from her list

2    of severe impairments, the ALJ could not have made an accurate residual functional capacity

3    (RFC) assessment of her restrictions, which affected the outcome of her case. See id. at 15-16.

4            Defendant contends that Plaintiff did not mention knee pain when she testified

5    before the ALJ about her neck, shoulder, and back pain, and that she often did the same when

6    speaking to medical providers. See ECF No. 22, pg. 9. Defendant also argues that the ALJ did in

7    fact properly consider Plaintiff's antalgic gait and difficulties sitting and rising, and that the

8    evidence in the record demonstrated that these symptoms had resolved and Plaintiff had regained

9    a full range of motion. See id. at 10. Defendant maintains that the ALJ nevertheless gave Plaintiff

10   the benefit of the doubt and credited her antalgic gait when determining her RFC. See id. at 10.

11   In essence, Defendant argues that any error at Step 2 is harmless because the ALJ properly

12   considered Plaintiff's limitations, including those related to gait and mobility, at Step 4 when

13   determining Plaintiff's RFC.

14           The Ninth Circuit has applied harmless error analysis in social security cases in a

15   number of contexts.  For example, in Stout v. Commissioner of Social Security, 454 F.3d 1050

16   (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness

17   testimony could only be considered harmless ". . . if no reasonable ALJ, when fully crediting the

18   testimony, could have reached a different disability determination." Id. at 1056; see also Robbins

19   v. Social Security Administration, 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at

20   1056).  Similarly, in Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004),

21   the court applied harmless error analysis to the ALJ's failure to properly credit the claimant's

22   testimony.  Specifically, the court held:

23           However, in light of all the other reasons given by the ALJ for Batson's
             lack of credibility and his residual functional capacity, and in light of the
24           objective medical evidence on which the ALJ relied there was substantial
             evidence supporting the ALJ's decision.  Any error the ALJ may have
25           committed in assuming that Batson was sitting while watching television,
             to the extent that this bore on an assessment of ability to work, was in our
26           view harmless and does not negate the validity of the ALJ's ultimate
             conclusion that Batson's testimony was not credible.

27           Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).

28

                                            6

In <u>Curry</u>, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the claimant's age and education.  The Ninth Circuit also considered harmless error in the context of the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a medical opinion.  <u>See</u> <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

The harmless error standard was applied in <u>Carmickle v. Commissioner</u>, 533 F.3d 1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility.  Citing <u>Batson</u>, the court stated:  "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error."  <u>See</u> <u>id.</u> at 1162.  The court articulated the difference between harmless error standards set forth in <u>Stout</u> and <u>Batson</u> as follows:

> . . . [T]he relevant inquiry [under the <u>Batson</u> standard] is not whether the ALJ would have made a different decision absent any error. . . it is whether the ALJ's decision remains legally valid, despite such error.  In <u>Batson</u>, we concluded that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but that such error did not affect the ALJ's decision, and therefore was harmless, because the ALJ's remaining reasons *and ultimate credibility determination* were adequately supported by substantial evidence in the record.  We never considered what the ALJ would do if directed to reassess credibility on remand – we focused on whether the error impacted the *validity* of the ALJ's decision.  Likewise, in <u>Stout</u>, after surveying our precedent applying harmless error on social security cases, we concluded that "in each case, the ALJ's error . . . was inconsequential to the *ultimate nondisability determination*."
>
> Our specific holding in <u>Stout</u> does require the court to consider whether the ALJ would have made a different decision, but significantly, in that case the ALJ failed to provide *any reasons* for rejecting the evidence at issue.  There was simply nothing in the record for the court to review to determine whether the ALJ's decision was adequately supported.
>
> <u>Carmickle</u>, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

Thus, where the ALJ errs in not providing any reasons supporting a particular determination (i.e., by failing to consider lay witness testimony), the <u>Stout</u> standard applies and the error is harmless if no reasonable ALJ could have reached a different conclusion had the error not occurred.  Otherwise, where the ALJ provides analysis but some part of that analysis is flawed (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either legally insufficient or unsupported by the record), the <u>Batson</u> standard applies and any error is harmless if it is inconsequential to the ultimate decision because the ALJ's disability

1    determination nonetheless remains valid.

2         Here, the Court applies the <u>Stout</u> standard because the ALJ provided no rationale

3    at Step 2 regarding the severity of Plaintiff's knee impairment.  As discussed above, the severity

4    determination at Step 2 applies a de minimis standard and is not an RFC finding.  The failure to

5    consider an impairment at Step 2 can only affect the disability determination when limitations

6    associated with that impairment are also not considered at Step 4 in determining the claimant's

7    RFC.  Such is the case here.

8         At the outset, the Court rejects Defendant's contention that, despite not

9    considering Plaintiff's knee impairment at Step 2, the ALJ nonetheless accounted for associated

10   limitations at Step 4.  In describing Plaintiff's residual functional capacity at Step 4, the ALJ

11   stated:

12   . . .To mitigate symptoms of an antalgic gait and musculoskeletal
     tenderness, and to minimize aggravation to the claimant's spine, the
     residual functional capacity restricts the claimant to work at the light
13   exertional level, and limits climbing of ramps, stairs, ladders, and
     scaffolds to occasional. The residual functional capacity also restricts
14   balancing, stooping, kneeling, crouching, and crawling to occasional.
     Given the claimant's antalgic gait, the residual functional capacity
15   provides that the claimant cannot work around unprotected heights, and
     must avoid concentrated exposure to moving mechanical parts. Finally, to
16   accommodate the claimant's shoulder impairment, the residual functional
     capacity limits right overhead reaching to occasional.

17
     CAR 36.
18

19        While the ALJ does indeed account for limitations potentially associated with

20   Plaintiff's knee impairment which was not considered at Step 2, such as limitations relating to

21   climbing, kneeling, and crawling, the ALJ does <u>not</u> account for possible limitations on sitting and

22   standing which Plaintiff's claims are the result of her knee impairment.  In fact, the ALJ has

23   provided no limitations to sitting and standing.  Because such limitations would have been

24   considered at Step 4 absent the error here at Step 2, the Court cannot say that the ALJ's error was

25   harmless.  <u>See</u> <u>Nadon v. Saul</u>, 851 F. App'x 24, 28 (9th Cir. 2021) (citing <u>Marsh v. Colvin</u>, 792

26   F.3d 1170, 1173 (9th Cir. 2015)).

27   / / /

28   / / /

It is possible that, had the error at Step 2 not occurred and had Plaintiff's knee impairment been considered severe and properly evaluated at Step 4, a reasonable ALJ could have reached a different result.  Therefore, the Court will remand this matter for a new determination by the Commissioner in the first instance which considers all of Plaintiff's established impairments at Step 2 and limitations associated therewith at Step 4.

### B.       Evaluation of Plaintiff's Subjective Statements and Testimony

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

In weighing a claimant's statements and testimony, the Commissioner may consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

1    At Step 4, the ALJ assessed Plaintiff's subjective statements concerning the

2    intensity, persistence, and limiting effects of her alleged symptoms.  See CAR 35-37.  The ALJ

3    summarized Plaintiff's statements and testimony as follows:

4         The claimant alleged that she had a right shoulder tear; pain in her right
          leg, neck, and back; and symptoms of weakness and dizziness (Exhibits

5         1E/2, 6E/1, 7E/1). At the hearing, she testified that she was unable to work
          due to pain and side effects of medication (Testimony). She testified

6         to difficulties moving her shoulder, neck, and back and to numbness in her
          neck (Id.). In addition, she continued, she had torn tendons in her right

7         shoulder and numbness in her left hand, which caused difficulty reaching
          (Id.). Functionally, she testified that she was able to sit for 20 minutes,

8         stand for 30-40 minutes, and lift a gallon of milk (Id.). However, she
          testified that she continues to drive, care for her disabled son, cook for her

9         children, and perform laundry (Id.).

10   CAR 35.

11   The ALJ concluded Plaintiff's statements and testimony are inconstant with her

12   daily activities and the medical record as a whole.  See id. at 35-36.  Plaintiff challenges the

13   ALJ's analysis as to both reasons.

14        1.    Daily Activities

15   Regarding reliance on a claimant's daily activities to discount testimony of

16   disabling pain, the Social Security Act does not require that disability claimants be utterly

17   incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has

18   repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . .

19   does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v.

20   Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

21   Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

22   claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic

23   restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

24   claimant was entitled to benefits based on constant leg and back pain despite the claimant's

25   ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

26   activities are not easily transferable to what may be the more grueling environment of the

27   workplace, where it might be impossible to periodically rest or take medication"). Daily activities

28   must be such that they show that the claimant is ". . .able to spend a substantial part of his day

10

engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to discount a claimant's pain testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to Plaintiff's daily activities, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. As the claimant has testified, she continues to engage in activities indicative of normal functioning, including driving, caring for her disabled son, cooking for her children, and performing laundry (*Testimony*).

> Additionally, while she stated that she was limited to sitting for twenty minutes, she sat comfortably for the duration of the entire hearing (*Id*.).

CAR 35.

Plaintiff argues that the ALJ erred by discrediting her symptom testimony based on the day-to-day functions she is still able to perform. See ECF No. 21, pg. 16. Plaintiff submits that the ALJ "failed to explain how these activities are inconsistent with Plaintiff's alleged limitations, and there is no evidence to suggest that performance of these activities requires greater exertion than Plaintiff testified she can perform." Id. Plaintiff further maintains that once the threshold issue of whether her medically determinable impairments could cause the alleged symptoms was met, the ALJ erred by rejecting her subjective symptom testimony without satisfying the "clear and convincing reasons" standard for doing so. See id. Finally, Plaintiff notes that "the ALJ fails to reconcile the alleged improvement cited to support his ruling . . . with the regression that was consistently noted later in the record." Id. at 17 (internal citation omitted).

Defendant asserts that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints. See ECF No. 22, pg. 10. In particular, Defendant contends that the evidence the ALJ considered included "objective medical evidence, improvement with treatment, and Plaintiff's daily activities." See ECF No. 22, pg. 12. Defendant further maintains that "Plaintiff's argument to the contrary essentially amounts to a request that the Court reweigh

1   the evidence, which it may not do." ECF No. 22, pg. 12 (citing <u>Spears v. Berryhill</u>, 720 F. App'x

2   358, 360 (9th Cir. 2017)).

3          The Court finds merit in Plaintiff's contention that the ALJ erred by relying on the

4   day-to-day activities she was still able to perform.  In this regard, the ALJ failed to make the

5   required specific findings with regards to Plaintiff's ability to spend a substantial part of her day

6   engaged in physical activities transferable to a work setting.  Instead, the ALJ merely summarized

7   the symptoms Plaintiff reported and some of the medical evidence in the record and held that the

8   medical evidence and her ability to perform basic household tasks were not "entirely" consistent

9   with her "statements concerning the intensity, persistence and limiting effects of these

10  symptoms." CAR 35.

11         A recent Ninth Circuit case is particularly instructive. In <u>Havens v. Kijakazi</u>, No.

12  21-35022, 2022 U.S. App. LEXIS 16270 (9th Cir. June 13, 2022) (unpublished), the ALJ

13  similarly cited the plaintiff's ability to attend to household chores and care for a family member

14  as reasons to discount his pain testimony. <u>Id.</u> at *3. However, the Ninth Circuit observed that

15  "Havens never testified that he cared for his father, and indeed testified that he tried to help his

16  father with chores but was unable to do so. He also explained that because of his conditions, he

17  frequently had to take breaks or have his father take over his chores." <u>Id.</u> at *3. The court held

18  that ". . .our precedents [] urge caution in concluding that daily activities performed in this

19  manner are inconsistent with pain testimony. . . ." <u>Havens</u>, at *3-4 (citing <u>Garrison v. Colvin</u>, 759

20  F.3d 995, 1014-15 (9th Cir. 2014)).

21         Here, Plaintiff testified that, before her injury, she had helped her autistic son with

22  "dressing, bathing, grooming, and feeding," but that following her injury she had to ask her son

23  for help and was reduced to going into the bathroom with him to "tell him what things he has to

24  do, so that he can get ready and take a bath." CAR 77-78. Furthermore, it appears that the ALJ

25  was somewhat selective in referencing the daily activities Plaintiff was still capable of doing.

26  Although the ALJ listed her ability to drive as one of several "activities indicative of normal

27  functioning," what Plaintiff actually testified was that although she did drive her son to and from

28  school, she was able to do so *only* with her left hand (Plaintiff is right-handed). <u>See</u> CAR 68, 76.

1   Additionally, Plaintiff testified that when driving, she could drive "maybe 20 to 25 minutes and

2   [she has] to stop and get out and rest." CAR 76. Plaintiff also testified that she could only wash

3   her hair with her left hand and that writing was a disaster (because she is right-handed and had to

4   write with her left). See id. She explained that although she cooked for her family, she did not

5   wash the dishes because "[i]t takes [her] about two hours to just wash two or three dishes." CAR

6   78. Although she did laundry, she did not clean the house, and although she went grocery

7   shopping, she always brought someone along to push the cart. See CAR 78-79.

8          This is a very different picture than the one the ALJ described when he cited

9   driving, cooking, doing laundry, and caring for Plaintiff's disabled son as reasons to discount her

10   pain testimony, and puts the instant case squarely in line with Havens. Moreover, the ALJ made

11   no finding that Plaintiff was able to spend a *substantial* part of each day engaged in such pursuits,

12   nor that the skills or ability to engage in these specific activities would translate to the workplace.

13   Consequently, the Court finds that the ALJ erred by discounting Plaintiff's pain testimony based

14   on her ability to perform a limited selection of household chores.

15          2.    Medical Record

16          If there is objective medical evidence of an underlying impairment, the

17   Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

18   because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

19   341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

20          The claimant need not produce objective medical evidence of the
     [symptom] itself, or the severity thereof.  Nor must the claimant produce
21   objective medical evidence of the causal relationship between the
     medically determinable impairment and the symptom.  By requiring that
22   the medical impairment "could reasonably be expected to produce" pain or
     another symptom, the Cotton test requires only that the causal relationship
23   be a reasonable inference, not a medically proven phenomenon.

24   80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
     Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).
25

26   The Commissioner may, however, consider the nature of the symptoms alleged, including

27   aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at

28   345-47.

1        In assessing Plaintiff's statements and testimony, the ALJ found they were

2   inconsistent with the medical evidence as a whole.  See CAR 35-36.  The ALJ found:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the medical evidence. The claimant as alleged limitations in her right shoulder, right leg, neck, and back (Exhibits lE/2, 6E/l, 7E/l, Testimony). In reviewing her treatment history, the undersigned notes that she sustained a work injury ten years prior in December 2008, at which time she had difficulty arising from a chair, an antalgic gait, restricted motion in her neck, and tenderness in her right shoulder, back, and lower extremities (Exhibit 4F/2-3). Objective MRI testing performed in conjunction with her injury indicated a small focal tear in the rotator cuff right shoulder in January 2009 (Exhibit 4F/183). Subsequent MRI imaging revealed mild disc desiccation and a mild annular bulge in her lumbar spine in March 2015 (Exhibit 8F/9) and severe stenosis at the C7-Tl level with impingement of the C8 nerve root in February 2016 (Exhibit 12F/6). The claimant's November 2009 nerve conduction study also showed cervical radiculitis with left radial sensory neuropathy (Exhibit 8F /7).
>
> However, her symptoms would respond positively to treatment. For example, in January 2009, the claimant no longer had an antalgic gait, and no difficulties arising from a chair, or getting up and down the examination table (Exhibit 4F/46-47). Additionally, her February 2016 right shoulder MRI revealed no discrete rotator cuff tear and mild tendinosis (Exhibit 12F/8) while her May 2014 EMG was normal without evidence of cervical radiculopathy (Exhibit 5F/16). Subsequent examinations would show generally preserved functionality. Notably, in March 2014, she had cervical tenderness and decreased range of motion in her right shoulder, but otherwise maintained a normal gait, intact sensation, and generally full motor strength in all extremities bilaterally (Exhibits 4F/221-222; 5F/4). Examinations in April and May 2015, and November 2016, would reveal a normal, non-antalgic gait, and the ability to heel and toe walk normally (Exhibit 8F/l, 4). During her June 2016 consultative examination, examiner Shahid Ali, M.D. observed that although the claimant had reduced sensation in her right upper extremity, she walked without assistance, sat comfortably, got on and off the examining table with ease, and retained the dexterity to remove her shoes (Exhibit 16F/2). By September 2016, symptoms in the claimant's spine and shoulders were mild, and she maintained normal range of motion in all extremities (Exhibit l 7F/13). At that time, the claimant reported that she was able to perform full range of motion of her neck without pain (Exhibit l 7F/13).
>
> The residual functional capacity accommodates the claimant's spinal and shoulder impairments as follows: To mitigate symptoms of an antalgic gait and musculoskeletal tenderness, and to minimize aggravation to the claimant's spine, the residual functional capacity restricts the claimant to work at the light exertional level, and limits climbing of ramps, stairs, ladders, and scaffolds to occasional. The residual functional capacity also restricts balancing, stooping, kneeling, crouching, and crawling to occasional. Given the claimant's antalgic gait, the residual functional capacity provides that the claimant cannot work around unprotected

heights, and must avoid concentrated exposure to moving mechanical parts. Finally, to accommodate the claimant's shoulder impairment, the residual functional capacity limits right overhead reaching to occasional.

CAR 35-36.

Plaintiff asserts that the ALJ erred by failing to specifically state how the objective medical findings contradicted her alleged limitations, and that the ALJ's "vague assertions that Plaintiff's allegations are not supported by the record [are] insufficient." ECF No. 21, pg. 17. She also argues that the ALJ "fail[ed] to reconcile the alleged improvement cited to support his ruling with the regression that was consistently noted later in the record." Id. (internal citation omitted).

Defendant contends that the ALJ "compared Plaintiff's allegations to the objective medical evidence" and "accounted for Plaintiff's right shoulder by limiting her to only occasional overhead reaching." ECF No. 22, pg. 12. Defendant also submits that the ALJ considered evidence in the record that demonstrated an improvement in Plaintiff's symptoms. See id. Defendant concludes that the ALJ "properly weighed Plaintiff's subjective complaints of disability against the record." Id. at 13.

As previously noted, an ALJ must "'specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony.'" Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting Treichler v. Comm'r of SSA, 775 F.3d 1090, 1102) (brackets in original). Here, as in Lambert, "[t]he ALJ noted generically that 'the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in this decision.'" Lambert, 980 F.3d at 1277. This introductory statement, which is "'routinely include[d]' in ALJ decisions denying benefits, did not 'identify what parts of the claimant's testimony were not credible and why.'" Id. (quoting Treichler, 775 F.3d at 1102).

Furthermore, as in Lambert, "[a]lthough the ALJ did provide a relatively detailed overview of [claimant]'s medical history, 'providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible.'" Lambert, 980 F.3d at 1278 (quoting Brown-Hunter v. Colvin, 806 F.3d 487, 494

1  (9th Cir. 2015)). Even setting aside the issue of whether or not the ALJ erred in disregarding

2  medical evidence of Plaintiff's regression, the ALJ's "discussion" of Plaintiff's symptoms

3  "respond[ing] positively to treatment," CAR 36, lacks any clear and convincing reasons – or any

4  reasons at all – for setting aside Plaintiff's subjective pain testimony. Neither Plaintiff nor

5  Defendant dispute the ALJ's finding that "the claimant's medically determinable impairments

6  could reasonably be expected to cause the alleged symptoms," CAR 35, and as explained

7  previously, merely finding that Plaintiff's pain testimony is inconsistent with objective medical

8  records *cannot* be used as grounds for rejecting that testimony; otherwise, there would be little

9  point in allowing pain testimony at all. The ALJ's bare recitation of facts, prefaced by a generic

10  assertion of inconsistency, is clearly insufficient to discredit her pain testimony under the

11  standards discussed above.

12          Moreover, this error is not harmless. An ALJ "must provide sufficient reasoning

13  that allows us to perform our own review, because "the 'grounds upon which an administrative

14  order must be judged are those upon which the record discloses that its action was based.'"

15  Lambert, 980 F.3d at 1277 (quoting Treichler, 775 F.3d at 1102). Accordingly, the Court rejects

16  Defendant's contention that "[b]ecause the ALJ considered valid factors and the findings are

17  supported by substantial evidence in the record, the Court may not engage in 'second-guessing',"

18  ECF No. 22, pg. 13. Here, "the ALJ did not provide enough 'reasoning in order for us to

19  meaningfully determine whether the ALJ's conclusions were supported by substantial evidence,'

20  [and] we cannot treat the error as harmless." Lambert, 980 F.3d at 1278 (quoting Treichler, 775

21  F.3d at 1103). "Because 'the agency's path' cannot 'reasonably be discerned,'" this Court cannot

22  affirm the ALJ's credibility determination, and this compels remand. Treichler, 775 F.3d at 1103

23  (quoting Alaska Dep't of Envtl. Conservation v. EPA, 540 U.S. 461, 497 (2004)).

24          **C.      Consideration of Workers' Compensation Claim Opinions**

25          "The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533

26  F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly

27  rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ

28  also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.

1    See id.

2          Under the regulations, only "licensed physicians and certain qualified specialists"

3 are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue,

4 674 F.3d 1104, 1111 (9th Cir. 2012). The opinions of non-examining professionals may also

5 constitute substantial evidence when the opinions are consistent with independent clinical

6 findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.

7 2002).  Social workers are not considered an acceptable medical source. See Turner v. Comm'r of

8 Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician

9 assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir.

10 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social

11 workers may be discounted provided the ALJ provides reasons germane to each source for doing

12 so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d

13 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when

14 opinions from "other sources" may be considered acceptable medical opinions).

15          In addition to considering its source, to evaluate whether the Commissioner

16 properly rejected a medical opinion in a claim filed before March 27, 2017, the Court considers

17 whether: (1) contradictory opinions are in the record; and (2) clinical findings support the

18 opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining

19 medical professional only for "clear and convincing" reasons supported by substantial evidence in

20 the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is

21 accorded superior weight, if it is contradicted by an examining professional's opinion which is

22 supported by different independent clinical findings, the Commissioner may resolve the conflict.

23 See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

24          A contradicted opinion of a treating or examining professional may be rejected

25 only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d

26 at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts

27 and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.

28 See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate

1   reasons, the Commissioner must defer to the opinion of a treating or examining professional. See

2   Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence,

3   is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any

4   event, the Commissioner need not give weight to any conclusory opinion supported by minimal

5   clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating

6   physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

7          At Step 4, the ALJ considered the medical evidence in the record related to

8   Plaintiff's workers' compensation claim:

> The undersigned also gives little weight to the various opinions contained in the claimant's medical record as to the claimant's requirement of work restrictions, references to modified work duties, and statements that the claimant was off work (Exhibits 2F, 4F, 15F). A finding of disability is an ultimate issue that is reserved to the Commissioner (20 CFR 404.1627(d), 416.927(d)). Because the issue is reserved, and because workers' compensation cases utilize standards very different from Social Security, these opinions cannot be afforded controlling weight, but were nevertheless duly considered pursuant to 20 CFR 404.1527(f), 416.927(f). These opinions are ultimately given little weight, as the claimant is able to perform a reduced range of work at the light exertional level as discussed under Dr. Naiman. As indicated above, the claimant's severe physical impairments resulted in reduced abilities following the alleged onset date, which are reflected in the assigned residual function capacity.
>
> Additional limitations associated with the claimant's worker's compensation claims are given little weight. The claimant was provided limitations as follows: she was limited to lifting and carrying ten pounds intermittently and twenty-five pounds occasionally; she could not lift over twenty pounds; she could frequently bend, twist, and squat, and intermittently reach above shoulder level bilaterally (Exhibit 4F/49, 105, 111-112, 118, 157, 176). These limitations are also given little weight, as "intermittent" is a term associated with worker's compensation, and find no corresponding definition under the Regulations. In addition, the claimant is limited to lifting and carrying a maximum of twenty pounds occasionally and performing postural activities on an occasional basis for the reasons discussed under Dr. Naiman. These opinions can thereby not be evaluated under Social Security standards, but were duly considered pursuant to 20 CFR 404.1527(f), 416.927(f).

> CAR 37-38.

25          Plaintiff argues that the ALJ erred by not "offer[ing] legitimate reasons for

26   rejecting the supported opinions rendered relative to a concurrent claim for worker's

27   compensation benefits." ECF No. 21, pg 18. In particular, Plaintiff contends that the ALJ

28   discounted these opinions because the terms used were associated with workers' compensation

and the ALJ could not find a corresponding social security definition. See id. Plaintiff asserts that the ALJ offered "no other basis [for] discounting his assessment, aside from his earlier vague conclusions that 'on balance' the evidence supports the assessed RFC." Id. at 19. Consequently, Plaintiff maintains that the ALJ did not state a proper basis for discounting opinion evidence that conflicted with his determination of RFC, and that such a legal error compels remand. See id.

Conversely, Defendant argues that the ALJ properly considered these workers' compensation-related opinions. Defendant submits that "the ALJ properly concluded that the opinions concerning work restrictions, modified work duties, and Plaintiff's time off work were issues reserved to the Commissioner," and that these opinions do not constitute medical opinions. ECF No. 22, pg. 14. Defendant further maintains that the ALJ properly gave little weight to 2008 and 2009 status reports from Dr. Han, which stated that Plaintiff could "lift up to 25 pounds occasionally and up to 10 pounds intermittently, and bend, twist, squat, and reach above shoulder intermittently and later frequently." Id. Defendant also contends that, although the ALJ did note that the term "intermittently" was associated with workers' compensation rather than social security, he did not use that discrepancy to reject these opinions. See id. Instead, Defendant contends, the ALJ used the workers' compensation documentation to soften Dr. Naiman's findings concerning Plaintiff's physical limitations. See id. Consequently, Defendant contends that no harm occurred in the ALJ's consideration of these opinions. The Court agrees.

Although the ALJ could have been more specific as to his reasons for assigning little weight to each workers' compensation-related opinion, it appears that they were nonetheless appropriately considered. Furthermore, to the extent that they were considered, they were cited by the ALJ to Plaintiff's benefit, rather than her detriment. Specifically, the ALJ relied on several of these records in deciding what weight to assign to state consultant Dr. Naiman's opinion. Ultimately, Dr. Naiman concluded that Plaintiff could reach overhead bilaterally; frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; frequently balance, stoop, kneel, crouch, and crawl; and avoid concentrated exposure to hazards. See CAR 37; 121-123. However, the ALJ found that the evidence supported a limitation to light work with *occasional right* overhead reaching; *occasional* climbing of ramps and stairs; *occasional*

1  balancing, stooping, kneeling, crouching, and crawling; no work at unprotected heights; no

2  concentrated exposure to moving mechanical parts; lifting and carrying a maximum of twenty

3  pounds occasionally; and occasionally performing postural activities.  In reaching this conclusion,

4  the ALJ cited several of Plaintiff's workers' compensation-related medical records (Exhibits

5  4F/2-3, 183, 221-222; 8F/7, 9; 12F/6). See CAR 38.

6          Plaintiff's claim that the ALJ improperly discounted workers' compensation

7  opinions, "including a limitation to lifting ten pounds intermittently and twenty-five pounds

8  occasionally, inability to lift over 20 pounds, only intermittent ability to bend or twist, and

9  records further document opinions of functional deficits in ability to reach or lift items weighing

10  over 5 pounds, as well as a preclusion from 'all but occasional use of the right upper limb at or

11  above shoulder level, and from repetitive reaching activities,'" ECF No. 21, pg. 18, *because they*

12  *were related to workers' compensation opinions*, is simply not supported by the record. As

13  previously discussed, the ALJ limited Plaintiff's lifting capacity to twenty pounds occasionally.

14  This is consistent with both "a limitation to lifting ten pounds intermittently and twenty-five

15  pounds occasionally" *and* "inability to lift over 20 pounds" (these claims appear to be in conflict,

16  but the Court need not resolve it, as either claim fits into the ALJ's restrictions).

17          While Plaintiff does reference a third lifting limitation from the workers'

18  compensation records, a "functional deficit" in her ability to lift more than five pounds, see ECF

19  No. 21, pg 18, it is clear that all three limitations Plaintiff claims are supported by workers'

20  compensation records cannot be true simultaneously. Furthermore, this limitation, which is the

21  only limitation not consistent with the ALJ's findings, appears to be based on a single physical

22  therapy record. See CAR 657. Additionally, the ALJ specifically indicated his consideration of

23  Exhibit 4F, which contained the record in question. See CAR 38. Finally, as previously noted,

24  only "licensed physicians and certain qualified specialists" are considered acceptable medical

25  sources.  A physical therapist is not considered such a source and is not entitled to the same

26  deference. See Valbush v. Kijakazi, No. 20-35131, 2021 U.S. App. LEXIS 37014, at *4 (9th Cir.

27  Dec. 15, 2021) (unpublished).

28  / / /

Plaintiff has made no substantive argument as to why a physical therapist's single report of a five-pound weight limit on June 6, 2009 (CAR 657), should take precedence over, or be weighed equally to, the acceptable medical opinions in the record. While the ALJ should have provided a specific reason for discounting the physical therapist's opinion, see Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), the other evidence in the record overwhelmingly supports the ALJ's finding of a twenty-pound weight limitation. It is not apparent that a more specific citation to a workers' compensation opinion would have produced a different result, as the ALJ's finding is consistent with two out of three of the weight limitations Plaintiff herself claims.

Moreover, while "bending" and "twisting" are terms associated with workers' compensation rather than social security, the ALJ did find that Plaintiff could balance, stoop, kneel, crouch, and crawl only occasionally, and the two workers' compensation records Plaintiff cites (CAR 657 and 872) do not contradict this finding. Finally, the ALJ's finding that Plaintiff could perform occasional right overhead reaching is highly consistent with Plaintiff's contention regarding what he should have found in the workers' compensation records, namely a preclusion from all but occasional use of the right upper limb at or above shoulder level or repetitive reaching activities. See ECF No. 21, pg. 18.

Consequently, Plaintiff has not demonstrated that the ALJ actually disregarded these opinions, or, more significantly, that Plaintiff was prejudiced by such lack of regard if it in fact occurred. This is not to say, however, that the Court finds the ALJ's current RFC determination to be without error.  As discussed above, the Court finds an error at Step 2 which is not harmless, specifically the ALJ's failure to evaluate Plaintiff's knee impairment.  Had this error not occurred, it may very well be that the ultimate RFC assessment would include additional limitations not set forth in the current hearing decision.

###    D.    Duty to Develop the Record

The ALJ has an independent duty to fully and fairly develop the record and assure the claimant's interests are considered. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts. See id. This requires the ALJ to "scrupulously and

21

conscientiously probe into, inquire of, and explore for all the relevant facts." Cox v. Califano, 587

F.2d 988, 991 (9th Cir. 1978). Ambiguous evidence or the ALJ's own finding that the record is

inadequate triggers this duty. See Tonapetyan, 242 F.3d at 1150. The ALJ may discharge the duty

to develop the record by subpoenaing the claimant's physicians, submitting questions to the

claimant's physicians, continuing the hearing, or keeping the record open after the hearing to

allow for supplementation of the record. See id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th

Cir. 1998)).

        Furthermore, as previously noted, the ALJ errs by not explicitly rejecting a

medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). A case may be

remanded to the agency for the consideration of new evidence if the evidence is material and good

cause exists for the absence of the evidence from the prior record. See Sanchez v. Secretary of

Health and Human Services, 812 F.2d 509, 511-12 (9th Cir. 1987) (citing 42 U.S.C. § 405(g)). In

order for new evidence to be "material," the Court must find that, had the agency considered this

evidence, the decision might have been different. See Clem v. Sullivan, 894 F.2d 328, 332 (9th

Cir. 1990). The Court need only find a reasonable possibility that the new evidence would have

changed the outcome of the case. See Booz v. Secretary of Health and Human Services, 734 F.2d

1378, 1380-81 (9th Cir. 1984). The new evidence, however, must be probative of the claimant's

condition as it existed at or before the time of the disability hearing. See Sanchez 812 F.2d at 511

(citing 42 U.S.C. § 416(i)(2)(G)).  In Sanchez, for example, the court concluded that the new

evidence in question was not material because it indicated "at most, mental deterioration after the

hearing, which would be material to a new application, but not probative of his condition at the

hearing." Id. at 512 (citing Ward v. Schweiker, 686 F.2d 762, 765-66 (9th Cir. 1982)).

        Plaintiff makes several contentions regarding the ALJ's development of the record.

First, Plaintiff argues that more than two years passed between the date of the last medical record

in evidence and the date of the first hearing, and that the medical records in evidence at that time

"reveal[] that there were many missing records during the period between the application date and

the hearing date." ECF No. 21, pg. 12. Plaintiff also claims that she submitted additional medical

evidence at both her first and second hearings which "demonstrated the existence of many new

objective test results, therapy, and treatment that occurred between the last record and the hearing date," but that this evidence was unexhibited. See id. at 12-13.

Plaintiff further contends that her non-represented status and functional illiteracy in the English language gave her a limited ability to protect her own interests and should have put the ALJ on notice that additional care would be required to ensure that the record was fully and fairly developed. See id. at 12. Plaintiff argues that it "is evident that none of the reviewing or examining doctor[s], nor the ALJ himself reviewed any of the voluminous outstanding evidence." See id. at 13. Therefore, Plaintiff submits that the record was necessarily inadequate to render a determination, particularly as to additional limitations to her right upper extremity and right knee and the worsening of Plaintiff's symptoms after a January 2017 motor vehicle accident. See id.

Defendant notes that the administrative record exceeds one thousand pages and argues that the record contained sufficient evidence for the ALJ to render a decision. See ECF No. 22, pg. 6. Conceding that this Court must also consider the evidence Plaintiff claims to have presented at her hearing, but which entered the administrative record as part of her submission to the Appeals Council, Defendant nevertheless maintains that the Commissioner's decision was supported by substantial evidence, which would require this Court to affirm the ALJ's decision. See id. at 7. Defendant apparently does not dispute Plaintiff's contention that she was unable to fully represent her own interests due to her lack of representation and difficulty with the English language.

Furthermore, Plaintiff and Defendant heavily dispute the availability of Plaintiff's additional medical records at the time of her hearings. While Plaintiff contends that the reports from Dr. Sommer and Dr. Saleem were presented at the time of the time of her hearing and were thus available to the ALJ at that time, Defendant argues that these reports were submitted *after* the hearings. See ECF No. 21, pgs. 12-13; ECF No. 22, pgs. 6-7. It is not necessary for this Court to resolve this factual dispute; either party's version of events would compel remand.

Assuming arguendo the accuracy of Plaintiff's contentions, that Dr. Sommer's January 23, 2018, report were presented at the time of the hearing, that report raises questions about additional physical conditions not discussed in the ALJ's hearing decision, including

1   Plaintiff's asserted right knee injury, which Dr. Sommer diagnosed as a "medial meniscal tear,"

2   and diminished grip strength. See CAR 105-106. Dr. Sommer also made the following

3   observations:

4
>       In the neck active movement is down by 25% through the ranges
5   with slight tenderness over the mid and caudal cervical spinous processes.
>       At the right shoulder there is limitation with extension to 20, flexion to
6   100, abduction to 110, adduction to 30. Internal and external rotation are
>       full. There is a mildly positive overhead impingement sign on the right. At
7   the lumbar spine active movement is two thirds of expected full. There is
>       tenderness in the midline between L4 and the sacrum, but not over the
8   sciatic notch or nerve on either side. There is spinal tenderness in the
>       upper thoracic midline as well. The upper extremity exam is normal on the
9   left. On the right the patient has subjective reduction of touch and pin
>       sensibility about the thumb and index finger, as well as the little finger.

10   CAR 105.

11        Dr. Sommer indicated that he had reviewed eighteen sets of records from Dr.

12   Wisner, sixteen pages of records from Dr. Askew, and one set of records each from Drs.

13   Kobayashi, Choo, Clair, and Manchester. See CAR 106. Some, but not all, of these records

14   appear in the administrative record, and reports from Drs. Kobayashi and Manchester do not

15   appear to be included at all. Furthermore, the ALJ's assertion that Plaintiff's symptoms appeared

16   to have diminished or resolved is inconsistent with both Dr. Sommer's report, which reflects an

17   examination that took place several years after the last report the ALJ considered, *and* the medical

18   records the ALJ cites in support of his contention. In fact, what the exhibits the ALJ identified

19   show is that Plaintiff's symptoms have fluctuated up and down over time. This is particularly true

20   considering that Plaintiff was involved in an automobile accident, sustaining additional injuries,

21   either on September 16, 2016, in January 2017, or both. See AR 947; ECF No. 21, pg. 10.

22        Conversely, even if Defendant's version of events are accepted and the records

23   from Dr. Sommer were not presented to the ALJ at or before Plaintiff's hearing, the ALJ erred by

24   not seeking out medical records for more recent care. The list of exhibits attached to the ALJ's

25   decision (CAR 41-46) includes a Report of Recent Medical Treatment dated September 19, 2018.

26   In that report, Plaintiff listed visits with Doctors Kobayashi, Clair, Manchester, and Sommer, as

27   well as updated diagnostic imaging. See CAR 405. These include the previously discussed

28   January 23, 2018, visit with Dr. Sommer, as well as an appointment with Dr. Wisner as recently

as September 6, 2018, but it does not appear that the ALJ sought out or considered a number of these medical records in reaching his decision. See CAR 405. The medical records in the ALJ's exhibit list, which otherwise show a highly consistent pattern of regular medical visits, do not go beyond October (physical medicine) or November (psychiatric medicine) of 2016. See CAR 406. Particularly considering that Plaintiff was unrepresented at her hearing, see CAR 49, and that she appeared to have difficulty describing her medical conditions even with a translator present, see CAR 74, the ALJ had an obligation to seek out these missing records and review them as part of his decision.

Defendant's contention that additional records are not material and would simply be cumulative, because substantial evidence supports the ALJ's decision, see ECF No. 22 pg. 7, is not well-taken. The absence of many of these records renders the ALJ's initial decision fundamentally flawed.  The ALJ could not possibly have made an accurate decision about Plaintiff's impairments without considering the *entirety* of her physical conditions, rather than a selective subset. Even considering only Dr. Sommer's 2018 report, there is a *reasonable possibility* that consideration of the impairments described in that document, many of which were not acknowledged in the ALJ's opinion, would result in a different outcome, which is all that this Court needs to find to justify remand.

Defendant's mention of the Appeals Council having considered Dr. Sommer's January 2018 report, see ECF No. 22 pg. 6, is also poorly taken. The Appeals Council summarily dismissed that report not on the merits, but on the basis that the ALJ decided Plaintiff's case only through December 2018, and thus Dr. Sommer's report was beyond the relevant time period. See CAR 8. Although this Court does not formally review the decision of the Appeals Council, the Court cannot help but note that January 2018 preceded December 2018, so the report from Dr. Sommer was properly before the Appeals Council – and should have been before the ALJ – for evaluation on the merits. Their summary assessment is not persuasive to this Court.

Defendant further contends that Dr. Sommer's 2018 report does not constitute a material update, because in his 2018 report he indicated a 17% "whole person impairment," while in previous reports he indicated an 18% "whole person impairment." See ECF No. 22, pg. 7

1    (internal citations omitted).  However, Defendant later states that the ALJ "properly concluded

2    that the opinions concerning work restrictions, modified work duties, and Plaintiff's time off

3    work were issues reserved to the Commissioner," and "correctly noted that the term 'intermittent'

4    was associated with workers compensation, rather than Social Security regulations." CAR 22, pg.

5    14. Defendant cannot have it both ways. Either the idiosyncratic disability verbiage and

6    terminology of workers compensation is translatable to the context of Social Security, or it is not.

7    If, as the ALJ wrote, "workers' compensation cases utilize standards very different from Social

8    Security," CAR 38, then the distinction between 17% and 18% "whole person impairment" does

9    not necessarily require that Plaintiff's level of disability was materially the same between the two

10   reports, and the latter report must still be duly considered.

11           For the reasons previously described, there is a reasonable possibility that

12   consideration of these additional records might have resulted in a different outcome. The ALJ's

13   failure to do so compels remand, and on remand the ALJ is advised to take notice of, and duly

14   evaluate, these additional records.

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1

2                          **IV.  CONCLUSION**

3              For the foregoing reasons, this matter will be remanded under sentence four of 42

4    U.S.C. § 405(g) for further development of the record and/or further findings addressing the

5    deficiencies noted above.

6              Accordingly, IT IS HEREBY ORDERED that:

7              1.      Plaintiff's motion for summary judgment (ECF No. 21) is granted;

8              2.      Defendant's motion for summary judgment (ECF No. 22) is denied;

9              3.      The Commissioner's final decision is reversed and this matter is remanded

10   for further proceedings consistent with this order; and

11             4.      The Clerk of the Court is directed to enter judgment and close this file.

12

13   Dated:  August 3, 2022

14                                                    _____
                                                     DENNIS M. COTA
15                                                   UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                  27